**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

TRACY ALLEN,                         :

    **Plaintiff,**                    :

vs.                                  :       CIVIL ACTION 08-00227-WS-B

ISAAC MOODY, *et al.*,               :

    **Defendants.**                  :


## REPORT AND RECOMMENDATION


Plaintiff, an Alabama prison inmate proceeding <u>pro</u> <u>se</u>, filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants Isaac Moody and Terry Montgomery (Docs. 28, 85) and Plaintiff's Opposition thereto. (Docs. 87, 88, 90, 92, 104, 105, 106, 108, 110). After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants be granted and that Plaintiff's action be dismissed with prejudice.

## I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. On April 13, 2008, while

1

incarcerated at Holman Correctional Facility ("Holman"), Plaintiff was attacked by a fellow inmate while walking to the shower in the segregation unit. (Doc. 1 at 4-5). According to Plaintiff, at approximately 3:45 p.m., he and his "next door neighbor" inmate Steven Parker had a verbal confrontation, during which Parker called Plaintiff by his nickname, "Alcapone," and told Plaintiff to meet him at the shower. (Doc. 16 at 5). Plaintiff responded, "I said Bitch. I wasnt plain on shower (sic). I'll be there." (Id.). It is undisputed that Plaintiff never notified Defendants Officers Moody or Montgomery of this prior verbal exchange.

The record reflects that at approximately 4:05 p.m., Correctional Officer Isaac Moody and Correctional Officer Terry Montgomery were in the midst of handling the showering process for the inmates housed in the segregation unit at Holman. (Doc. 28, Ex. E at 9). Specifically, Officer Moody was handcuffing each inmate at the inmate's cell, and then sending the inmate down the hallway to Officer Montgomery, who would then secure the inmate in a shower stall. (Id.). The record reflects that Officer Moody handcuffed inmate Parker and sent him to the shower area, where, according to Officer Moody, he assumed that Officer Montgomery was securing Parker in a shower cell. (Id. at 9).

However, upon reaching the shower area, inmate Parker used homemade handcuff keys, thereby he suddenly secured his release from the handcuffs. Inmate Parker then started running back down the hallway with a prison made knife in his hand. (Doc. 28, Ex. B at 1). According to Officer Montgomery, he had shower door number four open as he awaited inmate Parker. When inmate Parker was about four steps away from Officer Montgomery, he heard Plaintiff's cell door open. Officer Montgomery was not able to secure inmate Parker in the shower stall because he had come out of his handcuffs and was running down the hall towards Plaintiff's cell, with the homemade knife. (Id.). Officer Montgomery chased behind him. (Id.). Simultaneously, Correctional Officer Isaac Moody, who assumed that Parker had been secured in the shower stall, handcuffed Plaintiff and was in the process of sending him along the hallway to likewise be secured in the shower. (Id., Exs. B, G). It was at this point when inmate Parker unexpectedly returned down the hallway, running with the knife toward Plaintiff and Officer Moody. (Id., Exs. B, G).

According to Defendants, Officer Montgomery ran after inmate Parker who was chasing Plaintiff back to his cell. (Id., Ex. B) Officer Moody slipped and fell in the hallway while trying to pull out his canister of chemical agent Freeze Plus P. (Id., Ex. G). Officer Montgomery grabbed Officer Moody's dropped

3

bottle of Freeze Plus P as he ran past Officer Moody in pursuit of Plaintiff and Parker. (Id., Ex. G at 2).

Officer Montgomery avers that when he ran into Plaintiff's cell, Parker was stabbing Plaintiff. Officer Montgomery immediately sprayed inmate Parker to the back of the head with the Freeze P Plus; however, the spray had no effect on Parker. (Id., Ex. B at 2). Officer Montgomery then grabbed inmate Parker's right arm while he was still stabbing Plaintiff and pulled Parker off of Plaintiff. (Id.). When Officer Moody got back on his feet, he ran directly to Plaintiff's cell, where he saw Officer Montgomery pull inmate Parker off of Plaintiff. Officer Moody assisted Officer Montgomery in gaining control of Parker. (Id., Ex. G at 2). At that point, other officers came to assist, and they were able to take inmate Parker to the floor and secure the knife. (Id., Ex. B at 2).

Prison records are consistent with the affidavits of Officers Montgomery and Moody. In Correctional Sergeant Christopher Corbitt's statement, attached to the Incident Report, he stated that at the time of the altercation on April 13, 2008, a "Code Blue" was announced over the in-house radio. (Doc. 28, Ex. E at 5). A "Code Blue" signals that there is an altercation between two inmates. Sergeant Corbitt immediately ran out of the office and towards the Segregation Annex. (Id.). On his way, he heard "Code Red, Code Red" which indicates an

4

officer and inmate confrontation. (Id.). Upon his arrival, Sergeant Corbitt observed Correctional Officers Moody and Montgomery in a physical confrontation with inmate Steven Parker. Corbitt states that he approached inmate Parker and gave loud verbal commands to stop resisting. He then struck Parker below the knee with his baton. (Id.). When inmate Parker finally fell to the ground, Sergeant Corbitt grabbed his right hand and held it behind Parker's back, while Correctional Officer Michael McCrory, who had arrived at the scene after hearing the calls for help, placed handcuffs on Parker. (Id. at 5,7).

Correctional Officers McCrory and Michael Branch also reported hearing the "Code Blue" and subsequent "Code Red" alerts and immediately proceeded to the scene of the altercation. (Id. at 8). Officer Branch stated that he assisted Officer McCrory and Sergeant Corbitt in securing Parker. (Id.).

After inmate Parker was secured, Officer Moody went into Plaintiff's cell to see how badly he was hurt. (Id. at 9). Plaintiff was then escorted to the Health Care Unit. (Id.). Prison health records reflect that Plaintiff was examined at 4:25 p.m., and reported to the medical staff, "I'm was stuck (sic)." (Id. at 12). The medical staff examined Plaintiff and noted that he had sustained 14 stab wounds, as well as some

scratches. Per Dr. Barnes' instruction, Plaintiff was sent to Atmore Community Hospital for further evaluation. (Id.). Also included in the record are medical evaluations for Officers Montgomery, Moody, Branch, and Sergeant Corbitt. (Id. at 13-16). A notation of redness to the eyes is reflected on the medical evaluation for Officer Montgomery. (Id. at 13). Officer Moody reported to the medical staff that "[h]e came running at us, appear he wanted to hurt me (sic)" and that Moody slipped and fell. (Id. at 15).

Inmate Steven Parker subsequently pled guilty to the disciplinary charges of Possession of Contraband, Unauthorized Possession of a Weapon or Device that could be used as a Weapon, Unauthorized Possession of Escape Device, and Assault on Another Inmate. (Doc. 28, Ex. E at 17-41).

On May 2, 2008, Plaintiff filed the present § 1983 action asserting that Defendants, Correctional Officer Isaac Moody and Correctional Officer Terry Montgomery, were deliberately indifferent in their failure to protect him. (Doc. 1). On November 4, 2008, Plaintiff amended his claim for damages. According to Plaintiff, he is seeking compensatory and punitive damages in the amount of "99 quad zillions 99 trillion 99 million 99 thousand 99 hundred 99 dollar 99 cent." (Doc. 31).

Defendants filed their Answer and Special Report on October 29, 2008. Defendants deny Plaintiff's claims, and assert the

affirmative defenses of sovereign, qualified, and absolute immunity. (Doc. 28). Subsequently, on July 6, 2009, Plaintiff filed an Amended Statement (Doc. 78), which was treated as a motion to amend and was granted by this Court on July 22, 2009. (Doc. 80).

In his Amended Statement, Plaintiff states that Defendants caused a "pervasive risk," and that their "callous indifference gross negligence egregious failure to act or reckless disregard for [his] safety and this conduct cause the assault (sic)." (Doc. 78 at 1). Plaintiff specifically claims that Officer Moody opened his cell door without proper authorization, and that Officer Moody failed to properly search inmate Parker before letting him go to the shower area. (Id.). Plaintiff also complains that Officer Montgomery failed to alert Officer Moody or Plaintiff that inmate Parker had a weapon in his possession as Parker was running down the hallway. (Id. at 2). Plaintiff also again reiterates his claim that Officer Montgomery did not have proper protective devices on him, such as pepper spray or a baton. (Id.).

Defendants filed an Amended Answer and Special Report on September 15, 2009. Defendants again denied Plaintiff's claims, and asserted immunity. Defendants also argued that while Holman may have been admittedly understaffed on the day in question, the complained of actions by Defendants were at most claims of

negligence, and as such, they are not actionable under § 1983. (Doc. 85).

On November 24, 2009, the Court entered an Order converting Defendants' Amended Answer and Special Report to a Motion for Summary Judgment. (Doc. 97). Plaintiff has filed numerous pleadings with the Court. Those pleadings, and Defendants' Motion are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment … not to make all *possible* inferences in the nonmoving

party's favor." <u>Torjagbo v. United States</u>, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original).

> Rule 56(e)(2) states that:
>
> > [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

<u>Fed. R. Civ. P.</u> 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

Beard v. Banks, 548 U.S. 521, 529-30 (2006) (internal citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial."'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III. DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a physical attack by another inmate. (Docs. 1, 78). Specifically, Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to protect him from the physical attack by inmate Parker. As discussed above, Defendants deny that they violated Plaintiff's constitutional

rights and further assert the defenses of absolute and qualified immunity.[1] (Doc. 85).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

---

[1] In his Complaint, although somewhat unclear, Plaintiff seems to indicate that he is suing Defendants both in their individual and official capacities. As state officials, Defendants are entitled to absolute immunity from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case. Having found herein that Plaintiff's evidence does not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

> Constitution and laws, shall be liable
> to the party injured in an action at
> law, suit in equity, or other proper
> proceeding for redress….

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into
> its custody and holds him there against
> his will, the Constitution imposes upon
> it a corresponding duty to assume some
> responsibility for his safety and
> general well-being. … The rationale for
> this principle is simple enough: when
> the State by the affirmative exercise
> of its Power so restrains an
> individual's liberty that it renders
> him unable to care for himself, and at
> the same time fails to provide for his
> basic human needs – – *e.g.*, food,
> clothing, shelter, medical care, and
> reasonable safety – – it transgresses
> the substantive limits on state action
> set by the Eighth Amendment and the Due
> Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'"

13

_Farmer_, 511 U.S. at 834 (quoting _Wilson v. Seiter_, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." _LaMarca_, 995 F.2d at 1535 (quoting _Estelle v. Gamble_, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." _Sims_, 25 F.3d at 983-84 (citing _Hudson v. McMillian_, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" _Farmer_, 511 U.S. at 834 (quoting _Wilson_, 501 U.S. at 297).

In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. _Id._ (citations omitted). In defining "deliberate indifference," the Supreme Court in _Farmer_ stated:

> We hold … that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. <u>Id.</u> at 839-40. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not...." <u>Farmer</u>, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. <u>See</u>, <u>e.g.</u>, <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." <u>Farmer</u>, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." <u>Id.</u>

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

In his Complaint, Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the physical attack by

inmate Parker. Plaintiff argues that Defendant Officer Moody in effect caused his injuries by opening Plaintiff's cell door too soon, that is, before receiving proper authorization from Defendant Officer Montgomery. (Doc. 78 at 1). Plaintiff also contends that Officer Moody failed to properly search inmate Parker prior to sending Parker to the shower area. (Id.). Plaintiff further complains that neither Officer Moody nor Officer Montgomery was equipped with a baton and that Officer Montgomery had no chemical spray.[2] (Id. at 2).

Plaintiff does not allege, however, that either officer had reason to anticipate the attack. Plaintiff has admitted that prior to the altercation, he and inmate Parker had a verbal confrontation during which inmate Parker told Plaintiff to meet him at the shower, and Plaintiff replied, "I'll be there." (Doc. 16 at 5). It is undisputed that Plaintiff did not tell either Defendant Moody or Defendant Montgomery or any other correctional officer about this conversation.

In order to establish the objective element of an Eighth Amendment claim in a failure to protect case, an inmate must

---

[2] While complaining that Officer Montgomery had no chemical spray with him at the time of the incident, Plaintiff also contends, although unclearly, that the type of spray that Officer Moody had, "Freeze+P" is unconstitutional. (Doc. 78 at 3). It appears to be Plaintiff's opinion that "pepper maze," instead of "Freeze+P," should have been used in this instance. (Id.).

establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834. It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm...." <u>Purcell ex. rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320 (11th Cir. 2005) ("confinement in a prison where violence and terror reign is actionable."). On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." <u>Purcell</u>, 400 F.3d at 1320 (citations omitted).

"[A] prison custodian is not the guarantor of a prisoner's safety." <u>Purcell</u>, 400 F.3d at 1321 (citations omitted). "[N]ot ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." <u>Farmer</u>, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." <u>Farmer</u>, 511 U.S. at 844.

In the present case, Plaintiff has not established that he was exposed to "the constant threat of violence" while incarcerated at Holman, <u>see</u> <u>Purcell</u>, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834; <u>see also</u> <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced

17

evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack).

While Plaintiff has complained that he was endangered on this occasion by Defendant Montgomery's failure to be equipped with pepper spray and a baton, and by Defendant Moody's lack of a baton, these allegations do not show a condition that presented "a substantial risk of serious harm." Accordingly, the undersigned opines that Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

Even if, arguendo, Plaintiff's evidence satisfied the objective element of his Eighth Amendment claim, as previously noted, he must also demonstrate that Defendants were deliberately indifferent to the risk of serious harm to him. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm. LaMarca, 995 F.2d at 1537. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" Hale, 50 F.3d at 1583 (quoting

Farmer, 511 U.S. at 842). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Farmer, 511 U.S. at 842).

Plaintiff alleges a lack of security, stemming from his allegations concerning the security equipment worn by Defendant Officers Montgomery and Moody, and their actions or inactions at the precise time of the altercation. As noted supra, Plaintiff complains that he was attacked because Officer Moody opened Plaintiff's cell door before receiving authorization from Officer Montgomery, and that Officer Montgomery was not adequately equipped with a baton and pepper spray. Plaintiff also has alleged that if Officer Moody had properly searched Parker prior to letting him walk to the shower, Parker would not have had the keys or the knife in his possession. These allegations, rather than depicting deliberate indifference, seem to reflect at best, negligence on the part of the officers.

Moreover, the Court again points to the undisputed evidence that Plaintiff had a verbal confrontation with Parker just prior to shower time, in which he and Parker seemingly planned an altercation of some sort. Again, notably, it is undisputed that this information was not given to Defendant Officers Montgomery and Moody. Had these officers been armed with that information, this unfortunate altercation might possibly have been prevented.

While the Court notes that the stabbing of Plaintiff by inmate Parker was unfortunate, it simply does not reflect deliberate indifference on the part of Defendants. The evidence in the record indicates that Defendants Montgomery and Moody, faced with a dangerous and quickly unfolding and chaotic situation, summoned help from additional prison staff and ultimately ended the attack by pulling inmate Parker out of Plaintiff's cell. Moreover, Plaintiff was immediately given medical attention, including initial medical treatment at the prison, and was then transported by ambulance to Atmore Community Hospital. Later, Plaintiff was transferred to USA Medical Center in Mobile for treatment. (Doc. 28, Ex. F at 44, 46-49, 56, 57, 63, 66-68, 70-97, 105). Plaintiff has also been afforded extensive follow up medical treatment both at Holman and with outside specialists for injuries he suffered in the altercation with inmate Parker. (Id.). Fortunately, it appears from the record that Plaintiff has recovered well from the injuries he sustained. (Id.).

Plaintiff has failed to present any evidence that Defendant Moody or Defendant Montgomery was deliberately indifferent to the risk of harm to him from inmate Parker. There is simply no evidence that either Defendant knew that Plaintiff was at risk of being attacked by inmate Parker or any other inmate. There is no evidence that any threats had been made against Plaintiff

and made known to these Defendants, nor is there any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." <u>Farmer</u>, 511 U.S. at 842 (internal quotation marks omitted). The evidence indicates that Parker's attack was isolated, and facilitated by Parker's ability to remove his own handcuffs, breaking free from Officer Montgomery. At best, Plaintiff has shown negligence on the part of Defendants, and negligence is simply not enough to show a constitutional violation.

Because Plaintiff has failed to show that Defendants actually knew that a substantial risk of serious harm existed, <u>i.e.</u>, that Plaintiff was at risk of being harmed by another inmate, and they knowingly or recklessly declined to take action to prevent that harm, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment failure to protect claim.

IV.  CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Correctional Officer Isaac Moody and Correctional Officer Terry Montgomery, are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for

Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **26th** day of **July, 2010.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.    *Objection*.  Any party who objects to this recommendation or
anything in it must, within fourteen (14) days of the date of
service of this document, file specific written objections with
the Clerk of this court.  Failure to do so will bar a *de novo*
determination by the district judge of anything in the
recommendation and will bar an attack, on appeal, of the factual
findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C);
*Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v.
Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The
procedure for challenging the findings and recommendations of
the Magistrate Judge is set out in more detail in SD ALA LR 72.4
(June 1, 1997), which provides that:

> A party may object to a recommendation entered by
> a magistrate judge in a dispositive matter, that
> is, a matter excepted by 28 U.S.C. §
> 636(b)(1)(A), by filing a 'Statement of Objection
> to Magistrate Judge's Recommendation' within ten
> days[3] after being served with a copy of the
> recommendation, unless a different time is
> established by order.  The statement of objection
> shall specify those portions of the
> recommendation to which objection is made and the
> basis for the objection.  The objecting party
> shall submit to the district judge, at the time
> of filing the objection, a brief setting forth
> the party's arguments that the magistrate judge's
> recommendation should be reviewed de novo and a
> different disposition made.  It is insufficient
> to submit only a copy of the original brief

---

[3] Effective December 1, 2009, the time for filing written
objections was extended to "14 days after being served with a
copy of the recommended disposition[.]"  Fed. R. Civ. P.
72(b)(2).

submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **26th** day of **July, 2010.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**